UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **LEIPZIG LIVING TRUST,** | § | Case No. 14-00953 |
| | § | Chapter 11 |
| Debtor. | § | Judge Randal S. Mashburn |
| _____ | § | |

**PRELIMINARY RESPONSE TO MOTION FOR EXPEDITED RELIEF**

COMES NOW creditor Anarion Investments LLC ("Anarion"), by and through its undersigned attorney, and respectfully responds to the *Motion for Expedited Relief* (DE 4) filed by Carrington Mortgage Services, LLC ("Carrington"), as follows:

A. **Introduction.**

Anarion respectfully submits that Carrington does not have and has not established a basis for expedited relief under the Local Rules. This is not one of those "rare instances" where Carrington needs "action on notice shorter than that fixed by the Federal Rules of Bankruptcy Procedure or by LBR 9013-1 or LBR 9014-1." See LBR 9075-1. In essence and in intended effect, Carrington's motion is purely tactical and preemptory. Carrington's motion is nothing less than a hurry up attempt to quickly sweep its malfeasance and unlawful debt collection activities under the proverbial rug.

Notwithstanding its presentation as such, Carrington's motion for an expedited hearing is not about any purported emergency or a pressing need to conduct a foreclosure sale. After all, since February 2013, *over one year ago*, Carrington and later its attorneys Brock & Scott, PLLC ("B&S"), Carrington's counsel of record herein, have been engaging in unlawful debt collection and mortgage foreclosure activities that eventually resulted in the filing of a pending district court case and the postponement of the attempted foreclosure sale *no fewer than five times*. See February 18, 2014, *Notice of Related Case* (DE 8) on file herein.

Carrington's motion is simply a ruse. ***Carrington's motion for an expedited hearing is clearly a reaction to a letter sent by Anarion's counsel to Carrington's attorney the same day requesting that***

***important evidence be preserved, since it was recently confirmed that both Carrington's attorney and another attorney in another related case (see the General Sessions Case section below) were proactively coordinating efforts in their unlawful debt collection activities.*** See February 18, 2014, letter attached hereto.

Carrington discloses to the Court its desire to foreclose on residential real estate in Brentwood, Tennessee (the "Property"). What Carrington does not disclose to the Court, however, is what is and has been occurring in other pending cases where Carrington and other parties, including B&S, have been acting in concert and engaging in coordinated unlawful debt collection activities and other foreclosure improprieties related to the Property. Those activities are and have been subject to closer scrutiny, including a February 10, 2014, General Sessions Court judgment entered in Anarion's favor and against a third party for an improper lawsuit seeking to collect a debt, recorded against the Property, from the wrong party.

### B. Anarion Is The Equitable Owner Of The Property.

Anarion has a vested and valuable interest in the Property. "[T]he general rule is stated that a contract for the sale of land operates as an equitable conversion and the vendee's interest under the contract becomes realty and the vendor's interest becomes personalty, and in equity the vendee is regarded as the owner, subject to liability for the unpaid price, and the vendor is regarded as holding only the legal title in trust for the vendee from the time a valid contract for the purchase of land is entered into." *Id*., (citing 77 Am.Jur.2d 478-479, "Vendor and Purchaser," Sec. 317).

In Bates v. Dennis, 30 Tenn. App. 94, 203 S.W.2d 928 (1947), it was held:

If there was a valid executory contract between vendor and purchaser, then in the eyes of equity ownership of realty passed to the purchaser even though no deed was executed, and in that event the vendor would hold legal title on a naked trust which would follow it into the hands of the vendor's heirs on the vendor's death, under the maxim that equity regards that done which ought to have been done.

Anarion, the equitable owner of the Property and the holder of the exercised option to purchase the Property from debtor Leipzig Living Trust (the "Tennessee Trust"), has standing to challenge Carrington's claims as to who owes what to whom and how much and any and all liens any party has recorded or intends to record against the Property. In addition, third parties may enforce a contract if they are intended

beneficiaries of the contract. See *Willard v. Claborn*, 220 Tenn. 501, 419 S.W.2d 168, 169 (1967); *Moore Constr. Co. v. Clarksville Dept. of Elec.*, 707 S.W.2d 1, 9 (Tenn. Ct. App. 1985). In addition to being an equitable owner of the Property, Anarion is an intended third-party beneficiary of the CC&Rs applicable to the subdivision where the Property is located. See, e.g., Tenn. Code Ann. § 29-14-103; Tenn. R. Civ. P. 24 (a party has standing "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.").

The General Sessions Court already established, after extensive briefing, that Anarion has standing by demonstrating that it has a "sufficiently personal stake in the outcome of the litigation to warrant a judicial resolution of the dispute." *City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 55 (Tenn. App. 2004). The sufficient personal stake is demonstrated when a party "has a special interest in the final decision, different from the general public interest, or that the party will suffer 'a special injury not common to the public generally.'" *McRae v. Knox County*, No. E2003-01990-COA-R3-CV (Tenn. Ct. App., filed May 7, 2004). In *McRae* the Tennessee Court of Appeals had no problem finding standing for owners of property to challenge an action of Knox County that affected their use and enjoyment of their property.

In short, Anarion, as the vendee, holds title to the Property as the equitable owner thereof while legal title remains in the hands of the Tennessee Trust, the vendor. Anarion is suffering and will continue to suffer special injuries not common to the public generally.

    **C.**    **The Underlying And Related Court Cases.**

    **1.**  <u>**The District Court Case.**</u>  The district court case (DE 8) is about many things, and its underlying facts are still being uncovered and coming to the fore. Other than the pervasive fraudulent scheme orchestrated by B&S, Carrington, Christiana Trust, and the Tennessee Trust, possibly funded by other as yet unnamed third parties who may or may not be complicit in the overall historical arc of this case, the paramount focus of this civil action is the unlawful debt collection activities engaged in by three of the defendants under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. In part, the

FDCPA prohibits debt collectors from taking "any action that cannot legally be taken or that is not intended to be taken," engaging in any conduct that would "[h]arass, oppress, or abuse any person in connection with the collection of a debt," and using "unfair or unconscionable means" or "false, deceptive, or misleading representations or means" in their debt collection activities. See, e.g., 15 U.S.C. §§ 1692d, 1692e, 1692f, and Federal Trade Commission, *Staff Commentary on the FDCPA*, §§ 806, 807(5), 808. Contrary to what certain defendants would have this Court believe, the FDCPA does not only apply to consumers.

The foreclosure portion of the debt collection industry is largely made up of small to medium size companies whose profit models depend on the rapid and high-volume turnover of families' homes. Some of these companies, commonly referred to in the industry as "foreclosure mills," are actually loosely knit groups of individual attorneys who, through mass multi-state advertisement, hold themselves out to the public as full-service and one-stop debt collectors. B&S is one such company.[1]

In November 2013 Anarion discovered, quite fortuitously, that B&S, Carrington and Christiana Trust (collectively, the "Foreclosing Parties") published a foreclosure sale notice in the Tennessean (the "Notice of Sale") representing as fact that Christiana Trust appointed B&S, as substitute trustee, "*by an instrument duly recorded in the Office of the Register of Deeds of Williamson County*," to sell a family's home in Brentwood, Tennessee, i.e., the Property. The Foreclosing Parties' public representation, required by state and federal laws to be truthful and not misleading or deceptive, was undeniably false. No such recorded instrument existed. All three public Notices of Sale, the number of such notices as is required under Tennessee law and each actionable under the FDCPA, suffer the same infirmity.

Not only did the published Notices of Sale not properly designate the substitute trustee of record, but they also confirm, among other things, that the Foreclosing Parties did not properly provide the requisite statutory notice of the foreclosure sale to the following "interested parties": (1) Anarion, the equitable owner

---

[1] Including the company itself, the B&S attorneys who oversee, have knowledge of and are responsible for the unlawful debt collection and other activities alleged herein include January N. Taylor and Nicholas H. Adler. Mr. Adler is the attorney of record representing Carrington and Christiana Trust. The "feeder" companies to foreclosure mills like B&S include the holders and servicers of troubled, defaulted and nonperforming mortgage loans that were purchased, often without any advance due diligence, from large financial institutions as part of bundled investment packages sometimes consisting of thousands of other debt obligations. Carrington and Christiana Trust are two such companies.

of the Property; (2) the tenants of the Property; (3) the Tennessee Trust, the title owner of the Property; and (4) Kirk Leipzig ("Leipzig") the borrower signing the underlying debt. In the truest sense of the phrase, the Foreclosing Parties were attempting to literally sell the property out from under Anarion and other interested parties, i.e., "under the radar" so to speak, without those having the right to know knowing it. To aggravate things further, prior to the Notices of Sale first being published the Foreclosing Parties were acting in concert and complicit with the Tennessee Trust and Leipzig to sell the Property at foreclosure without Anarion's knowledge.

The above two examples represent only the tip of the iceberg concerning the Foreclosing Parties' unlawful activities. Their surreptitious plan to defraud Anarion and deprive it and others of the value of their investments and their legal and equitable interests in the Property, which scheme began with the initial attempt to foreclose on the Property over one year ago in early February 2013, may have succeeded had it not been for Anarion's fortuitous November 2013 discovery of the initial Notice of Sale. Up until then it primarily manifested itself in the form of a threat by Leipzig, who was himself threatened by another who had sued him before, directed to Anarion and its representative as to what would happen should Anarion or anyone else expose Leipzig for certain other sundry and improper acts involving other third parties, some of them apparently uninformed as to Leipzig's true intentions.

The first failed attempt to foreclose eventually led the former mortgage loan holder, Bank of America, N.A. ("BANA"), to abandon its own collection and foreclosure efforts and distance itself from the borrower and title owner with whom it had been inextricably associated, i.e., Leipzig and the Tennessee Trust. Unbeknownst to Anarion at the time, the Foreclosing Parties later secured BANA's position under the mortgage loan and then attempted to succeed where BANA failed. The "confidential" transfer of the mortgage loan from BANA to Christiana Trust (the "Confidential Assignment") was kept hidden from plaintiff until after this legal action was filed.

Notwithstanding all the secret agendas and attendant gymnastics the Foreclosing Parties' fraudulent scheme was eventually exposed. Apparently, the Foreclosing Parties believed they could fool all of the people all of the time. They were wrong. Upon being made aware of the irregularities attendant to the

foreclosure processes and Anarion's later discovery and knowledge of the Foreclosing Parties' scheme B&S wisely postponed the foreclosure proceedings as BANA similarly did earlier that same year. Again, all told, since the initial failed attempt in February 2013 the foreclosure sale has been rescheduled *five additional times* and Leipzig's involvement in *no fewer than seven* alleged Ponzi schemes has now impacted the ebb and flow of the parties' negotiations.

In the district court action the Foreclosing Parties' unlawful debt collection and fraudulent activities continue to mature and remain largely unabated.[2]

### 2. The General Sessions Court Case.

This particular case is an unfortunate, although not entirely unexpected, consequence of personal vendettas being pursued over the years by one of the corporate attorneys ("Scarbrough") representing Gasser Property Management, LLC ("Gasser") and certain individual board members of defendant Hampton Reserve Homeowners' Association, Inc. ("HOA") in other related matters. Hampton Reserve is where the Property is located.

The General Sessions Case has its roots back in December 2012. The General Sessions Case, seeking recovery of HOA homeowner's dues of about $3,850, was settled in March 2013 for $6,848. The settlement agreement was fully performed by September 2013. The next day the General Sessions Court was notified of the parties' settlement, following which satisfaction of settlement the General Sessions Case was to be nonsuited as previously agreed to by the parties. Immediately after the General Sessions Court was notified of the settlement, though, the HOA terminated its former attorney, i.e., the attorney that helped settle the General Sessions Case, and hired a new one, i.e., Scarbrough, who had other conflicting ideas. The events leading up to this abrupt changing of the guard and about face approach to the General Sessions Case can be better understood upon reflection of events of the preceding month, i.e., August 2013.

Scarbrough's substitution as new counsel in the General Sessions Case came only two weeks after his clients, former members of the HOA's board of directors, were sued in federal district court for, among

---

[2] Tenn. Code Ann. § 35-5-107 provides that any officer or other person referenced in Tenn. Code Ann. § 35-5-106 who fails to comply with the provisions of Tenn. Code Ann. § 35-5-101, *et seq*. commits a Class C misdemeanor and is liable to the party injured by the noncompliance, for all damages resulting from the failure. The Foreclosing Parties and their respective officers, representatives and attorneys are subject to the provisions of Tenn. Code Ann. § 35-5-107.

other things, fraud, violations of the federal Electronic Communications Privacy Act, 18 U.S.C. 2510 *et seq.*, (the "Federal Wiretap Act"), and defamation.[3] Events leading to the filing of the federal lawsuit were precipitated by the fortuitous discovery of a "confidential" memo one of Scarbrough's HOA board member clients transmitted to the city of Brentwood's Planning and Codes and Engineering Departments.[4]

Two weeks after the federal action was filed against his clients and only a few days after his entry into the General Sessions Court case as the HOA's new attorney of record, Scarbrough, quickly notified opposing counsel in the General Sessions Case, who also represents Anarion, that the HOA was repudiating its settlement agreement *and instead proceeding with the already settled General Sessions Case*, apparently to collect exorbitant attorney's fees that may have been billed by Scarbrough's law firm to the HOA since Scarbrough became involved.

To make a long story short, but by no means implying that the gravity of Scarbrough's activities should be diminished, Scarbrough's "debt collection" activities against the equitable and title owners of the subject residential real estate located in Hampton Reserve, in which the family of Anarion's counsel herein resides, have continued unabated and with increased interference with Anarion's counsel's family, clients and business relationships, e.g., seeking a final judgment against the wrong party in the General Sessions Case; pursuing an order to show cause against Anarion's attorney (which went absolutely nowhere); unnecessarily harassing Anarion's attorney's wife at home, thus aggravating her serious medical condition (a doctor's confirmation was provided to the General Sessions Court); refusing to comply with a General Sessions Court order requiring that Scarbrough, on behalf of the HOA, timely file a brief with the General Sessions Court by January 15, 2014, addressing issues relating to the HOA's lawsuit against the wrong party;

---

[3] During an HOA meeting on August 8, 2013, the husband of the HOA's president, also a Scarbrough client, told the female plaintiff in that case, while she was politely and calmly exercising her lawful right to participate in the open discourse of the evening's discussions, "shut the f--- up, you rotten c---."

[4] But for the helpful and enlightening assistance and direction of Brentwood city officials Jeff Dobson (Director of Planning and Codes) and Steve Foster (City Engineer) the plaintiff in the federal action, indeed a significant number of Hampton Reserve residents, would not have uncovered the "confidential" memo and underlying secret plan, in which Scarbrough was instrumental as corporate counsel, to take away for private use public Hampton Reserve common areas that are supposed to be for the enjoyment of all, not just a select few, of those residing in that Williamson County subdivision.

and pursuing debt collection activities in violation of federal law.[5]

On February 10, 2014, Judge Williams of the General Sessions Court dismissed the HOA's case and entered judgment in Anarion and Leipzig's favor.

**D.    Conclusion.**

The Foreclosing Parties have been acting in concert with Scarbrough in coordinated and unlawful mortgage foreclosure and debt collection efforts vis-a-vis the Property on several fronts. Informal discovery is bearing this out.

Accordingly, given the short amount of time necessary to address all relevant underlying issues related to the Foreclosing Parties and Scarbrough's coordinated unlawful debt collection activities, Anarion respectfully requests that Carrington's motion for an expedited relief be **DENIED**.

---

[5]    Scarbrough believes the litigation privilege shields him from liability for unlawful debt collection activities under the FDCPA and other tortious conduct. He is mistaken, and the law is well settled in this regard.

"[A]ttorneys in Tennessee are only entitled to immunity under the litigation privilege if the conduct at issue falls within certain parameters." *Unarco Material Handling, Inc. v. Liberato*, No. M2009-01603-COA-R3-CV (Tenn. Ct. App. 2010) (e.g., behavior evidencing an intent to harm that was independent from the desire to protect the client, with "bad faith, personal ill-will, malice, or a deliberate intent to harm the third party," or that the attorney was acting outside the scope of the lawyer-client relationship). "Even when an attorney is acting within the scope of representing the client, the attorney may be liable under the exceptional circumstances rule if the attorney is guilty of fraud, collusion, or a malicious and tortious act." *Id.*

In addition, the litigation privilege does not insulate attorneys from liability under the FDCPA. In fact, under the FDCPA attorney debt collectors warrant closer scrutiny because their abusive collection practices "are more egregious than those of lay collectors." *Crossley v. Lieberman*, 868 F.2d 566, 570 (3d Cir. 1989). "All circuits to consider the issue, except for the Eleventh, have recognized the general principle that the FDCPA applies to the litigation activities of attorneys who qualify as debt collectors under the statutory definition." *Sayyed v. Wolpoff & Abramson,* 485 F.3d 226, 232 (4th Cir.2007); *Allen ex rel. v. LaSalle Bank*, 629 F.3d 364 (3d Cir. 2011) (the litigation privilege does not absolve a debt collector from FDCPA liability). See also, *Glazer v. Chase Home Finance, LLC*, 704 F.3d 453 (6th Cir. 2013) (attorneys engaged in the collection of debts are debt collectors subject to liability under the FDCPA); *Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003); *James v. Wadas*, 724 F.3d 1312 (10th Cir. 2013) (referencing Pub.L. No. 99–361, 100 Stat. 768 (1986), H.R.Rep. No. 99–405, at 1752, in which Congress repealed the attorney exemption in response to the large increase in the number of attorneys conducting debt collection).

Respectfully submitted,

By: */s/ Scott D. Johannessen*

Scott D. Johannessen, BPR # 26767
LAW OFFICES OF SCOTT D. JOHANNESSEN
3200 West End Avenue, Suite 500
Nashville, TN 37203
Telephone: 877.863.5400
Facsimile: 877.863.5401
E-Mail: scott@sdjnet.com
Web: www.sdjnet.com

*Attorney for Anarion Investments LLC*



LAW OFFICES OF
# SCOTT D. JOHANNESSEN

TENNESSEE OFFICE:
BLUECROSS BUILDING
3200 WEST END AVENUE, SUITE 500
NASHVILLE, TENNESSEE 37203 USA

February 18, 2014

*Via Email:* nick.adler@brockandscott.com
*and Facsimile:* 615.550.8484

Nicholas H. Adler
Brock & Scott, PLLC
277 Mallory Station Road, Suite 115
Franklin, TN 37067

    Re:  Notice to Preserve Evidence; Spoliation of Evidence Advisory
            Anarion Investments LLC v. Brock & Scott, PLLC, et al.;
            U.S. District Court, Middle District of Tennessee; Case No. 3:14-cv-00012

Dear Nick:

      This letter is being sent to you in the context of the above-referenced action (the "Federal Action") on behalf of my clients, including Anarion Investments LLC ("Anarion"). It also concerns the pending bankruptcy involving Leipzig Living Trust (the "Tennessee Trust").

      This letter is also being sent to you out of an abundance of caution, as I understand attorney Brad Scarbrough, with whom you have previously spoken, may have been communicating with you regarding and further interfering with Anarion's business relationships with my former client, Kirk Leipzig, and the title owner of my family's home, the Tennessee Trust. As I have mentioned in prior correspondence with you, if you would like more information concerning Mr. Scarbrough's activities I would suggest you review the public records in the two pending Williamson County Chancery and General Sessions Court state cases and the Tennessee Middle District Court federal case in which Mr. Scarbrough's role as a material witness is of significance and import to, among other things, Counts I and II of the Federal Action against you and your clients.

      Accordingly, by this letter you and your clients (collectively, the "Defendants") are hereby given notice not to destroy, conceal or alter any paper or electronic files and other data under their independent or collective possession, custody or control generated by and/or stored on computers and/or storage media (e.g., hard disks, floppy disks, flash drives, compact discs or digital video disks, backup tapes, mobile phones, electronic tablets, etc.) or any other electronically stored information and data, such as voicemail, email or text (collectively, "ESI").

      Through discovery in the Federal Action and other cases my client expects to obtain from Defendants and third parties a number of documents and things, including ESI, accounting and other financial and business records and files stored on Defendants' computers and storage media. In order to avoid spoliation, you will need to provide the data requested on the original media. Do not reuse any media to provide this data. The information concerns not only Defendants, their members, attorneys, investors, creditors and lienholders but also other persons and entities including, but not limited to, the

following: Brad Scarbrough, Law Office of Brad Scarbrough, PLLC, Kirk Leipzig, and Leipzig Living Trust.

You are also not to pack, compress, purge or otherwise dispose of files and parts of files unless a true and correct copy of such files is made. You are also to preserve and not destroy all passwords, decryption procedures (including, if necessary, the software to decrypt the files), network access codes, ID names, manuals, tutorials, written instructions, decompression or reconstruction software, and any and all other information and things necessary to access, view and, if necessary, reconstruct the electronic data my clients will request through discovery.

Please understand that your failure to comply with this notice can result in severe sanctions being imposed by the Court and possible liability in tort for spoliation of evidence or potential evidence. Spoliation of evidence includes "the destruction or significant alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F. 3d 776, 779 (2nd Cir. 1999). Sanctions may be imposed upon anyone, including their employees, agents and representatives, who discards, destroys, mutilates, alters, or conceals potentially incriminating evidence. See, e.g., *Foley v. St. Thomas Hosp.,* 906 S.W.2d 448, 453-54 (Tenn. Ct. App. 1995); *Bronson v. Umphries,* 138 S.W.3d 844, 854 -855 (Tenn. Ct. App. 2003).[1]

Please also understand that a party's obligation to preserve evidence is generally held to arise when the party knows or has reason to know that evidence may be relevant to future litigation. This "reasonable anticipation of litigation" standard means that any person or company who should see a claim or lawsuit on the horizon must act, *even before a evidence preservation letter or lawsuit has materialized*, to cease activities likely to destroy electronic or tangible evidence and must take affirmative steps to preserve such evidence.

With regard to ESI and other data and documents created subsequent to the date of delivery of this letter, relevant evidence is not be destroyed and Defendants are to take whatever steps are appropriate to avoid destruction of evidence. To that end, in order to assure that Defendants' collective obligation to preserve documents and things will be met, please forward a copy of this letter to all Defendants and other persons and entities with custodial responsibility for the items and categories of items referred to in this letter.

Finally, adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and

---

[1] The doctrine of spoliation of evidence permits a court to draw a negative inference against a party who has intentionally, and for an improper purpose, destroyed, mutilated, lost, altered, or concealed evidence. *Kincade v. Jiffy Lube*, No. W2007-00995-COA-R3-CV, 2008 WL 1970348 at *4 (Tenn. Ct. App. May 8, 2008). *Rimkus Consulting v. Cammarata,* 2010 WL 645353 at *4 (S.D. Tex. 2010) ("Allegations of spoliation, including the destruction of evidence in pending or reasonably foreseeable litigation, are addressed in federal courts through the inherent power to regulate the litigation process if the conduct occurs before a case is filed or if, for another reason, there is no statute or rule that adequately addresses the conduct."). Courts have made it clear that all information available on electronic storage media is discoverable, whether readily readable, i.e., active, or deleted but recoverable. A common law duty to preserve continues to be 'triggered" when a party knew or should have known that potential discoverable evidence may be relevant to foreseeable litigation." *Ciacciarella v. Bronko*, 2009 WL 4878723, at *2 (D. Conn. Dec. 11, 2009) (duty to preserve triggered when plaintiff made audio recording of conversation well in advance of filing suit).

employ proper techniques and protocols suited to protection of ESI.  *Be advised that sources of ESI are altered and erased by continued use of your computers and other devices.*  Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence.  Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI.

      You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI.

      Nothing in this demand for preservation of ESI should be understood to diminish your concurrent obligation to preserve document, tangible things and other potentially relevant evidence.  This request to take remedial action is without prejudice to any person's or entity's rights at law or in equity.  The foregoing is not an election to waive any right or remedy that anyone has not yet chosen to pursue.  Nothing herein shall limit or waive anyone's rights or remedies including, but not limited to, the right to bring an action for damages and/or injunctive relief under any applicable federal, state or municipal law, statute or regulation.

      Best regards,

      Scott D. Johannessen

# CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on the 19th day of February 2014 he caused a true and correct copy of the foregoing document to be delivered to the U.S. Trustee, Office of the United States Trustee, 701 Broadway, Suite 318, Nashville, Tennessee 37203-3966 and the persons/entities appearing of record herein via first class United States mail, postage prepaid, and/or, where possible, via electronic mail through the Court's ECF system. Parties may also access this filing through the Court's ECF system.

Nicholas H. Adler  
Brock & Scott, PLLC  
277 Mallory Station Road, Suite 115  
Nashville, TN 37067

Leipzig Living Trust  
c/o Kirk Leipzig  
1 Burton Hills Blvd., Suite 120  
Nashville, TN 37215

      By:   */s/ Scott D. Johannessen*  
              Scott D. Johannessen